SCHMIT, Respondent, vs. FREDERICKSON and another, Appellants.[1]

*December 9, 1914—January 12, 1915.*

*Master and servant: Injury: Negligence of fellow-servant: Evidence.*

1. In an action for personal injuries alleged to have been caused by negligence of a fellow-servant in throwing or dropping one end of a timber which he and the plaintiff were unloading from a wagon, it is *held* that there is no evidence that the fellow-servant was negligent.
2. Negligence of a fellow-servant in such simple operations must affirmatively appear, and the jury cannot be permitted to assume there was negligence when the undisputed evidence is consistent with no negligence.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

This action was brought to recover for personal injuries. There was a verdict and judgment for plaintiff, and defendants appealed.

At the close of the evidence the defendants moved for a directed verdict, which was denied, and afterwards moved for a new trial, which was denied.

The plaintiff, together with Willie Knetchges and Pat Brady, were at the time of the injury in the employ of the defendants and engaged in unloading timber from a wagon onto a lumber pile, and the negligence complained of is that of a fellow-servant, Willie Knetchges. Counsel for respondent relies upon the evidence of plaintiff to prove negligence, which is as follows:

"When we got to the place where we should unload the timbers and I was back of the wagon, and pulled the timber back and tried to swing it around toward the pile then we should slide them down where they should pile it. Now I took two

---

[1] This case was not printed in its regular order in 159 Wis. because of the pendency of a motion for rehearing, which was afterwards abandoned.

of them that way and we did slide them, the third timber the fellow he got up and said, 'Let us carry the timber'— *Q.* Now who do you mean by 'the fellow?' *A.* That Willie Knetchges. Yes, then I said, 'That's no way to carry the timber; that's easier to slide them.' And he took a hold on it under his arm like that (illustrating), and he walked over until he got half way by the other timber that was lying on the front, so that it balanced, and he just swung it around and throwed it in place there. That was the third. The fourth one, by the time they were leveling that up I took another and swung it right around, and he came and took a hold on it and I never thought anything by it, and when I pulled it off I had it just like this (illustrating), and just the same time I pulled it off he throwed it there and then I said to him, 'That ain't not the way to do business because you could hurt a fellow.' Then he said, 'Who is going to hurt you?' Then I said, 'It won't take much once in a while to hurt a fellow by throwing timbers down.' The same time I took another, and we did slide that over again and then the sixth timber, when I turned that around, he came up on the pile and he took a hold on it and I didn't trust him no more, and I said, 'Now if I would know that you would drop it, I would take no hold on it,' and he said three or four times, 'Take my word for it, I won't drop it,' and then I said 'All right,' I took hold on it and just when I was pulling it off from the back of the wagon down he throwed it; I had the timber just to pull off, and at the same time he throwed it, and it gave me such a jerk that went right through my whole system and I kept on shaking and I am shaking today, and I had to go and lean up about four or five minutes against the glazing room. That was timbers eight by eight, twelve feet long, and was four green ones and they were good and heavy, and the rest of them was pretty dry. *Q.* Now, what was the fact, *Mr. Schmit,* with respect to there being a pile of dimension timbers right at the edge of the driveway, and right by the side of the wagon, when they were unloading? *A.* Why, they got all different sized timbers there; now the long timbers they keep along the drive, and the shorter timbers they pile back of it. *Q.* Were there any long timbers piled close to the driveway? *A.* Why yes, there were some alongside the driveway. *Q.* How high were they piled? *A.* Oh, so far as I could see, about three

feet, pretty close to three feet high.  *Q.* State to the jury
how wide this pile of timber was on top.  *A.* I guess about
three or four feet.  *Q.* Now, at the time that Willie Knetch-
ges took hold of this timber, that he let fall or threw at the
time you were injured, state where he was standing.  *A.* He
stood right on top of the pile of the long timbers, and he
throwed it down and I got injured.  *Q.* Now state to the
court and jury where you stood at the time the timber was let
fall.  *A.* I stood at the back of the wagon; had a hold on one
end of the timber.  After Knetchges threw the timber I
stood there trembling and shaking.  I said, 'Now you did
that, now you did hurt me.'  Then he said, 'I didn't know
that did hurt.' "

On cross-examination the plaintiff testified:

"*Q.* And he took it at the other end and you took it at the
rear end?  *A.* Yes.  *Q.* And yet you pulled it away down
and turned· it around?  *A.* No; I took it from the wagon,
turned it around and then I had it turned facing the pile
where they should pile it.   When I had it turned that way,
here is the wagon (indicating), and after I had it turned that
way, here is the wheel (indicating) so he stood on top of the
pile.  *Q.* The pile on the wagon?  *A.* On top of the pile of
long timbers.  *Q.* You turned the timber around to him?
*A.* I turned it around to him and he took it under his arm
like this (illustrating).  I says, 'Willie, are you going to
throw it down?'  He says, 'No, I won't.'  I asked him a
couple of times.  I said, 'If I knew you were going to throw
it, I wouldn't touch it.'  He says, 'Take my word for it, I
won't throw it.'  I says, 'All right, I will take your word for
it.'  *Q.* You weren't looking at him to see him let go of it?
*A.* No, but I—  *Q.* Wait a minute.  Were you looking at
Willie when he dropped it or threw it as you claim?  *A.* No,
I wasn't looking at him.  I looked at the back end where to
get a hold of it—  *Q.* You were·just hanging on to the other
end of the timber?  *A.* I was trying to pull it off, and the
same time when I had it like this to get it off (illustrating)
he throwed his end."

Plaintiff further testified:

"*Q.* How far did the timber fall?  *A.* It fell about, say
a foot, or maybe not quite a foot off from one of them long

timbers.   *Q.* Will you explain to the jury just what you were doing that took your attention, took your eyes from Willie at the moment that he let this piece of timber fall?   *A.* When he had the hold, when he had the timber under his arm, why, I looked on the end here and just pulled it, when I had it just to pull off, down it dropped there on the timbers where he stood on, and there is where I got the jarring of it, just when I pulled it off.   *Q.* He had the timber under his arm? *A.* Under his arm.   Mr. Bagley: How did you have the timber, under your arm, or in your hand?   *A.* No sir, I had them like this (illustrating).   Mr. Bagley: Just in your hand?   *A.* Just take them off.   Court: That is, you were holding your two hands off to your left side, grasping the timber?   *A.* Grasping the timber."

For the appellants there was a brief by *Bagley & Reed,* and oral argument by *W. R. Bagley.*

For the respondent there was a brief by *J. J. McManamy* and *Francis V. McManamy,* and oral argument by *J. J. Mc-Manamy.*

Kerwin, J.   Two questions are presented upon this appeal.   (1) Whether the defendants were guilty of negligence; and (2) whether the plaintiff was guilty of contributory negligence.

After a careful examination of the record we are convinced that there is no proof of negligence.   The servants Brady and Knetchges deny that the timber was thrown or the plaintiff injured in any manner.   The burden of proof was upon the plaintiff to prove negligence.   The operation of unloading the timber was very simple.   The timbers were 8 x 8 and twelve feet long.   The wagon was close to the lumber pile and the load about on a level with the lumber pile.   The plaintiff stood back of the wagon and swung, or assisted in swinging, the timbers so as to get the front end on the pile first, and with the assistance of Knetchges and Brady they were placed on the pile.   The negligence complained of is that Knetchges threw or dropped the timber in such manner as to injure

plaintiff.    There is no evidence that Knetchges threw or dropped the timber in a negligent manner.  True, plaintiff testified that Knetchges threw or dropped it, but he admits that he was not looking when the timber dropped, and that his knowledge as to whether it was thrown or dropped was that he felt it.    The evidence is consistent with the idea that the timber dropped while Knetchges was in the exercise of ordinary care in handling the front end of it.    Negligence is never to be presumed.    There must be some proof of it.    The drop was slight, only about a foot.    At the time it occurred Knetchges was holding the front end, had it under his arm. The plaintiff was manipulating the rear end, "was trying to pull it off."

There is no evidence that Knetchges was not exercising ordinary care in managing the front end, unless it can be said that he negligently dropped his end, and there is no evidence of this.    The mere fact that the end of the timber dropped a foot does not alone constitute negligence.    Proof of negligence of a fellow-servant in such simple operations must affirmatively appear.    The jury cannot be permitted to assume that there was negligence when the undisputed evidence is consistent with no negligence.    *Johnson v. Berwind F. Co.* 154 Wis. 1, 141 N. W. 1018; *Salus v. G. N. R. Co.* 157 Wis. 546, 147 N. W. 1070.

We are convinced that there was no evidence of negligence of defendants.    This being so, we need not consider the question of contributory negligence.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to dismiss the complaint.